PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM P. McCLELLAN, | ) | |
| | ) | CASE NO.  5:19CV1836 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WARDEN HAROLD MAY[1], | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Respondent. | ) | [Resolving ECF No.1] |

Pending before the Court is *Pro Se* Petitioner William P. McClellan's request for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  In opposition, Respondent Lyneal Wainwright, in his capacity as Warden of the Marion Correctional Institution in Marion, Ohio, filed a Return of Writ (ECF No. 6).  Petitioner failed to file a Traverse, despite the Court granting him additional time to do so.  *See* non-document Orders 12/6/2019 and 1/7/2020 granting ECF Nos. 9, 10.[2]  Having reviewed the parties' filings, exhibits, and the applicable law, the Court denies Petitioner's request.

---

[1]  Lyneal Wainwright was the original respondent.  He was sued in an official capacity as a public officer.  According to the Ohio Department of Rehabilitation & Correction website (https://drc.ohio.gov/gci (last visited September 29, 2022)), Harold May is now the Warden at Marion Correctional Institution.  Pursuant to Fed. R. Civ. P. 25(d), May's name has been automatically substituted as a party.

[2]  Petitioner's last request for more time was made nearly 10 months after the Traverse was due, and after having been granted two prior extensions of time.  Given the generality of the alleged reasons for the delay in filing, including Covid-19, overcrowding, and a lack of access to legal resources, Petitioner's last motion was appropriately denied.  It is worth noting that, during the same time period that Petition repeatedly sought additional time, other inmates managed to timely fulfill their litigative obligations.

(5:19CV1836)

# I.  Background

## A.  State Court Conviction

The Court of Appeals of Ohio, Fifth Appellate District for Stark County (the "state appellate court") provided the following binding factual findings on direct appeal[3]:

> [*P2] Appellant was indicted and convicted of raping a seven year old child, A.B., the daughter of Amanda Nutt, Appellant's cousin, while he was serving as a baby sitter.
>
> [*P3] Ms. Nutt and her husband made arrangements for Nicole Wallace, Appellant's girlfriend, to watch their children while they were at work.  Ms. Wallace helped the older children get ready for school and then remained home with Ms. Nutt's infant daughter until Ms. Nutt or her husband arrived home.  Appellant would often accompany Ms. Wallace and tend to his and Ms. Wallace's daughter while Ms. Wallace cared for Ms. Nutt's children.  Appellant would watch the children if Ms. Wallace was unavailable.  January 25, 2017 was one of the dates that Appellant watched the children without Ms. Wallace present.
>
> [*P4] On January 25, 2017 Appellant sent all of the children to school with the exception of A.B..  He told A.B. that she was going to stay home and help him care for J.R..  Once the other children had left for school Appellant directed A.B to go to the couch, lie down on her belly and pull her pants and underwear down to her ankles.  At that point he sexually assaulted A.B. and ejaculated on her buttocks.
>
> [*P5] For reasons not explained, Appellant called Ms. Nutt and Ms. Wallace and told them that A.B. could not find her shoes and was going to stay home from school.  Ms. Nutt insisted that A.B. had plenty of shoes and that Appellant was to take her to school.  Appellant complied and delivered A.B. to school at 9:54 AM.
>
> [*P6] A.B. came home after school and went upstairs to change.  She was trembling, so her father asked her what happened.  She described the assault and Mr. Nutt relayed the same to Ms. Nutt.  Ms. Nutt took A.B. to Mercy Medical Center at the recommendation of law enforcement and then to Akron Children's Hospital.

---

[3]  The state court's factual findings are presumed to be correct, and Petitioner may rebut the presumption of correctness only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

2

(5:19CV1836)

[\*P7] Penny Daly, social worker at Akron Children's Hospital, met the family and began the protocol required for an allegation of sexual assault of a child. Ms. Daly taped an interview of A.B. who repeated the allegations that she previously explained to her mother.  Thereafter a nurse practitioner, Megan Dahlheimer, recommended a physical exam and collection of a sexual assault kit.  A.B.'s underwear, purple and black long sleeve shirt and purple stretch jeans were collected by law enforcement and a sexual assault kit was collected.

[\*P8] Detective Joseph Mongold of the Canton Police Department was assigned to investigate the allegations of A.B.  He visited A.B's. school and learned she came in late on January 25, 2017.  He went to Appellant's home on March 17, 2017 to speak with Appellant but Appellant was watching his infant daughter. Instead, Appellant agreed to come to the police station on March 20, 2017 where he participated in a videotaped interview.  During that interview Appellant admitted sodomizing A.B.  His description of the offense matched in all significant details with the story provided by A.B..

[\*P9] As part of the investigation of the alleged sexual assault, DNA was collected from the clothing of A.B..  That DNA and Appellant's DNA were delivered to the Ohio Bureau of Criminal Investigation.  A test for male specific DNA, Y-STR, was completed on A.B.'s clothing at 25 different locations.  Erika Jimenez, an analyst in the DNA Unit, testified that she was able to obtain a profile on 19 of those locations and all 19 were consistent with Appellant's DNA.

[\*P10] The Stark County Grand Jury indicted Appellant on one count of rape, in violation of R.C. 2907.02 (A)(1)(b), a felony of the first degree.  Because the victim was under the age of 10, the count carried a potential imprisonment term of life without parole.  Appellant initially pled not guilty and then filed a motion to plead not guilty by reason of insanity and requested a competency evaluation. The evaluator found Appellant competent to stand trial and the motion to plead not guilty by reason of insanity was withdrawn; the plea of not guilty remained and the case was set for trial.

[\*P11] On August 16, 2017 Appellant filed a motion to suppress his confession. The motion was overruled but certain portions of the statement were deemed inadmissible.  The Appellee played Appellant's recorded confession at trial with the appropriate edits.

[\*P12] On September 8, 2017 Appellant filed a motion in limine to prohibit any reference to prior convictions from 2000 and 2006 involving rape and sexual imposition.  Appellant also requested that the Appellant's comments regarding comparison of the victim's genitals to his own daughter's genitals be prohibited. The State complied and made no reference to either of those issues during trial.

[\*P13] Prior to the commencement of the jury trial the victim was questioned by the trial court for competency.  The trial court found that A.B. understood the

3

(5:19CV1836)

court's questions and the difference between the truth and a lie and found her competent to testify. Appellant raised no objection to A.B.'s competency during this hearing or the trial.

[*P14] Also prior to trial an Arnold hearing was conducted to address the admissibility of statements made by A.B. to the social worker, Penny Daly and Megan Dahlheimer, the nurse practitioner. The trial court ruled that Daly could testify to the statements made by A.B. because they were made for the purpose of medical diagnosis and treatment, but nurse Dahlheimer could not give an opinion regarding whether the victim was sexually abused. While Ms. Daly did testify, the Appellee also played for the jury the videotaped interview of A.B. as conducted by Ms. Daly. Nurse Dahlheimer did not testify.

[*P15] Appellant did not object to playing the videotape of A.B. for the jury until that point in the tape where A.B. made statements regarding prior instances of abuse by Appellant. The trial court dismissed the jury and heard argument from counsel regarding whether the full tape should be played. After reviewing the video, the medical records, and the testimony of Penny Daly concerning the disclosures made to her during the interview of A.B., the trial court allowed the tape to be heard by the jurors after a limiting instruction and allowed the defense the opportunity to recall and question the victim about those other acts.

[*P16] Appellant moved for acquittal after the state rested and, after that motion was overruled, Appellant rested without presenting witnesses or recalling the victim. The jury was instructed, completed its deliberations and found Appellant guilty. Appellant returned to court on September 15, 2017 and was sentenced to life in prison without the possibility of parole.

*State v. McClellan*, 2018-Ohio-3355, ¶¶12-16 (ECF No. 6-1 at PageID #: 175-97).

## B. Post-Conviction Procedural History

Petitioner filed a timely notice of appeal to the state appellate court. Petitioner raised the following four assignments of error:

(1) The trial court erred by finding A.B., a child under the age of ten, was competent to testify;

(2) Appellant's convictions were against the sufficiency and manifest weight of the evidence;

(3) The trial court erred by admitting into evidence the statements made by A.B. to Penny Daly because the statements were not made for the purposes of medical diagnosis or treatment; and

4

(5:19CV1836)

> (4) The trial court erred by admitting into evidence portions of the video that introduced other acts evidence in violation of Rule 404(B) of the Ohio Rules of Evidence.

ECF No. 6-1 at PageID #: 104.

In August 2018, the state appellate court overruled all four of Petitioner's assignments of error and affirmed the judgment of the trial court.  ECF No. 1 at PageID #: 2.  Petitioner subsequently filed a timely notice of appeal with the Ohio Supreme Court.  ECF No. 6 at PageID #: 42.  Petitioner set forth the aforementioned assignments of error as propositions of law in support of jurisdiction.  Id.  In December 2018, "the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4)."  Id.

Petitioner timely filed an Application for Reopening ("App. R. 26(B)") his direct appeal based on allegations that his appellate counsel had provided ineffective assistance by failing to raise the following arguments:

> (1) Appellate counsel failed to raise ineffective assistance of trial counsel for failure to object to fundamental elementary trial procedures

> (2) Appellate counsel was ineffective when he failed to raise trial counsel's failure to appropriate funds for an expert in false confessions, violating Appellant's right to due process and a fair trial provided by the United States, and Ohio Constitution.

> (3) Appellate counsel was ineffective when he failed to raise trial counsel's ineffectiveness for failing to ask the court for appropriated funds for an expert witness on DNA evidence, violating Appellant's right to due process, and a fair trial provided by the United States, and Ohio Constitution(s).

> (4) Appellate counsel failed to raise trial counsel's failure to ask the court to appropriate funds for a medical exert concerning the negative results of the rape kit, in violation of Appellant's right to due process, and the right to a fair trial afforded by the United States, and Ohio Constitution(s).

5

(5:19CV1836)

*Id.* at PageID #: 43.

"In a judgment entry filed on November 26, 2018, the appellate court rejected [Petitioner's] application for failing to adhere to the technical requirements of App. R. 26(B)(2)(d)[4], and alternatively, as meritless."  ECF No. 6 at PageID #: 43.  Petitioner once again timely filed a notice of appeal to the Supreme Court of Ohio.  *Id.*  To support his appeal, Petitioner set for the following arguments:

> (1) Appellant counsel failed to raise ineffective assistance of trial counsel for failure to object to fundamental elementary trial procedures violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the United States Constitution.

> (2) Appellate counsel was ineffective when he failed to raise the issue of trial counsel's failure to appropriate funds for an expert witness in false confessions, violating appellant's rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and Fourteenth Amendments to the United States constitution.

> (3) Appellate counsel was ineffective when he failed to raise trial counsel's ineffectiveness for failing to ask the court to appropriate funds for an exert witness on D.N.A. evidence, violating appellant's rights to due process and a fair trial. Ohio Const. ART. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the United States Constitution.

> (4) Appellate counsel failed to raise trial counsel's failure to ask the court to appropriate funds for a medical expert concerning the negative results of the rape kit, violating appellant's right to due process and a fair trial.  Ohio Const. Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the United States Constitution.

---

[4] "An application for reopening shall contain all of the following…[including a] sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record."

6

(5:19CV1836)

*Id.* at PageID #: 44.

Relying on the Rules of Practice of the Supreme Court of Ohio, S.Ct.Prac.R. 7.08(B)(4), on March 6, 2019, the Ohio Supreme Court again declined to accept jurisdiction of the appeal. *See Id.*

## II.  Instant Federal Habeas Petition

### A.  LEGAL STANDARD

**1.  Jurisdiction**

Title 28, United States Code Section 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  As of this writing, Petitioner is in custody, given his incarceration at the Marion Correctional Institution.[5] Accordingly, the Court has jurisdiction over the Petition, pursuant to 28 U.S.C. § 2254(a).

**2.  Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state

---

[5]
*See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A702051(last  visited September 30, 2022).

(5:19CV1836)

law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court.  Meaning, it does not review state courts' decisions on state law or procedure.  *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)).  Rather, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

**3.  Exhaustion**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review of the instant petition for writ of habeas corpus.  *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that the AEDPA governs petitions filed after April 24, 1996); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  *See also* 28 U.S.C. § 2254(d); *see also Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  Under the AEDPA, state prisoners must either exhaust all possible state remedies or have no remaining state remedies before a federal court can review a petition for writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509, 515–19 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

(5:19CV1836)

845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("The highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims.").

**4.  Procedural Default**

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams*, 460 F.3d at 806.  In determining whether there has been procedural default, the federal court looks to the last explained state-court judgment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id.* at 732-33.  To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the

(5:19CV1836)

petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848);

*see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at

each and every level [of the state courts] cannot be considered in a federal habeas corpus

petition."). Under these circumstances, while the exhaustion requirement is technically satisfied

because there are no longer any state-court remedies available to the petitioner, the petitioner's

failure to have the federal claims fully considered in the state courts constitutes a procedural

default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state

court remedies are no longer available to a petitioner because he or she failed to use them within

the required time period, procedural default and not exhaustion bars federal court review."); *see*

*also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement

'refers only to remedies still available at the time of the federal petition,' ..., it is satisfied 'if it is

clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' ...."

(internal citations omitted)).

       Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its

legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674,

681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts

as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting

*Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural

default by demonstrating cause for the default and actual prejudice that resulted from the alleged

violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim

is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must

be something external to the petitioner, something that cannot be fairly attributed to him." *Id.*

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner

10

(5:19CV1836)

can show that some objective factor external to the defense impeded counsel's efforts to comply

with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the

conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir.

2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

**5. Standard of Review**

The AEDPA provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

To obtain a writ of habeas corpus, Petitioner has the burden to prove that he is "in

custody" in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. §

2254. AEDPA "instructs that federal courts shall not grant a habeas petition filed by a state

prisoner with respect to any claim adjudicated on the merits by a state court, absent applicability

of either of two specific exceptions." *Freeman v. Gray*, 1:19CV2907, 2022 WL 3348625 (N.D.

Ohio Aug. 12, 2022).

The first exception is triggered when a state court issues "'a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court[.]'" (quoting 28 U.S.C. § 2254(d)(1)). The second exception is triggered when a

state court decision "'was based on an unreasonable determination of the facts" in light of the

record before it.'"

11

(5:19CV1836)

"AEDPA's requirements reflect a 'presumption that state courts know and follow the law[,]'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and its "highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be given the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford*, 537 U.S. at 24).  *Id.*  "The Supreme Court has repeatedly held it is not enough to show the state court was wrong."  *Id.  See, e.g., Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (citation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold").  "Rather, AEDPA forecloses relief unless the petitioner can show the state court was *so* wrong that the error was" beyond mere fair-minded disagreement.  *Id.*  Accordingly, when a state court decision is reviewed under § 2254(d), the reviewing court must ask whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court.  *Id.*  (quoting *Woods v. Etherton*, 578 U.S. 113, 118 (2016).

### III.  DISCUSSION

On August 5, 2019, Petitioner filed the instant habeas petition raising eight grounds for relief.  The Court now turns to this Petition.

GROUND 1:  The trial court erred by finding A. B., a child under the age of ten, was competent to testify.

Supporting Facts: Prior to the beginning of evidence in the trial, the court conducted voir dire examination of the eight year old victim  A.B. outside the presence of the jury.  The trial court's findings of competence appeared to be satisfied.  But, later during trial the testimony she gave she made [sic] several incorrect statements that undermined the competency findings of the trial court.  It

12

(5:19CV1836)

is believed if the trial court would have questioned A.B. longer and asked more
probing questions it is far more likely that concerns about her competency would
have suffered [sic] sooner.  The trial court simply abused its discretion when finding
A.B. competent[.]  A.B.'s ability to receive just impressions of facts and events and
accurately relate them is highly questionable.  A.B. was unable to answer many of
the state's questions without prompting.

GROUND 2:  Appellant's convictions were [sic] against the sufficiency and
manifest weight of evidence.

Supporting Facts:  A.B., the alleged victim[,] gave answers that were contradictory
and in correct [sic].  In addition[,] there is no Physical evidence linking Mr.
McClellan to this alleged crime.  In fact there is little evidence supporting the
commission of a crime at all.  And, although there was a rape kit reportedly
collected there was no testimony regarding its results[.]  In addition there was no
medical evidence supporting A.B.'s allegations.  No medical experts testified.
There was no evidence of injuries or abrasions or any other conditions consistent
with being anally penetrated by a grown man.  No body fluids were identified on
A.B.'s underpants.  The D.N.A. that was present on her underpants was "Touch
D.N.A." the transfer which does not require sexual contact.  Mr. [McClellan] was
the designated babysitter and had did laundry and been in the house hundreds of
times.  In addition[,] there were other males present who live in the home that was
[sic] not tested for "Male Specific" D.N.A.

GROUND 3:  The trial court erred by admitting into evidence the statements made
by A.B. to Penny Daly because the statements were not made for the purpose of
medical diagnosis or treatment.

Supporting Facts:  In the state's motion to determine admissibility of statements,
the state specifically, "seeks to play portions of the interview that was relied on by
Ms. Dahileimer [sic] during her physical examination of the victim".  The state
further request [sic] this hearing to determine what portions of the tape require
redaction and to determine what statements were relied upon by the medical
professional who examined the alleged victim and therefore are admissible as
statements made for the purpose of medical diagnosis and treatment.  Despite the
extensive reference to the taped interview, the state failed to play the video of the
interview at the Arnold hearing.  At the conclusion of the Arnold hearing, the trial
court ruled that Ms. Daly[,] a social worker[,] could testify to statements she elicited
from the alleged victim because the "methodology and training" that she used was
appropriate to elicit from the alleged victim the statements necessary for her to then
recommend to other individuals what actions needed to be taken.
    Fact, because the video was not introduced at the Arnold hearing, the court
should have not have [sic] permitted its admission to the jury trial.
    Fact, when determining if the statements A.B. made to Ms. Daly are for the
purposes of medical disguises [sic] or treatment the court concluded that they were
because the methodology and training she used was appropriate to elicit from the

13

(5:19CV1836)

alleged victim the statements necessary for her to then recommend to other individuals, medical individuals[,] what actions needed to be taken. The only person Ms. Daly spoke to was Ms. Dahlheimer, the on call nurse from the care center. It was Ms. Dalheimer's [sic] responsibility to recommend what action needed to be taken and suggested that Ms. Daly have the medical staff complete an evidence collection kit. The word evidence alone suggests that the kit is for forensic law enforcement purposes and not medical treatment. This assertion is further supported by the fact that Ms. Dadlheimer [sic] did not testify at the jury trial. Clearly, A.B. did not have any medical need to tend to. The statements A.B. made to Ms. Daly during the forensic interview are inadmissible hearsay evidence.

GROUND 4: The trial court erred by admitting into evidence portions of the video that introduced other acts evidence in violation of rule 404 (B) of the Ohio Rules of Evidence.

Supporting Facts: The court's limited instruction was misplaced when it advised that "any indication of other acts on the part of the defendant are to be considered only for limited purpose, not to show a patter [sic] of conduct or modus operandi on the part of the defendant".

Fact, this is not a whodunnit? situation. The state did not introduce the statements in the video for the purpose to establish identity. The state introduced it to demonstrate Mr. MCCLellan [sic] is the kind of person who whoops his cousin with a belt and digitally penetrates her, [sic] he must have raped her as well.
The state is simply trying to make it look like Mr. MCCLellan [sic] has for some reason targeted A.B. and will hurt her any way that he can [sic]. In other words he is acting in conformity therewith [sick].

GROUND 5: Appellate counsel failed to raise ineffective assistance of trial counsel for failure to object to fundamental elementary trial procedures, violating his right to due process and a fair trial. The Ohio Const. ART. I, Section 10 and 16 to the United States Constitution.

Supporting Facts: Trial counsel raised no objection to A.B.'s competency hearing. He did not object to playing the video tape of A.B. for the jury until in the tape where A.B. made statements regarding prior instances of alleged abuses by appellant. Trial counsel failed to object to the Arnold hearing which set the stage for multiple disadvantages for appellant. Trial counsel failed to produce the basic rudimentary objection for appellant before or during the hearing. Any competent attorney attending appellant's trial would had [sic] objected before or during the Arnold hearing to preserve appellant's right to a fair trial. Trial counsel should have objected before or during the Arnold hearing to suppress evidence of the hearing as a whole. Specifically' [sic] the alleged other acts evidence.
Appellant's comprehensive confession was unrebutted by trial counsel which demonstrates that trial counsel's performance, (and Appellate counsels) prejudiced appellant's defense to such an extent that it rendered the whole proceeding unfair. [sic]

14

(5:19CV1836)

GROUND 6:  Appellate counsel was ineffective when he failed to raise the issue of trial counsel's failure to appropriate funds for an expert witness in false confessions, violating appellant's right to due process and a fair trial.  The Ohio Const, ART, I, Section 10 & 16 of the Fifth and Fourteenth Amendments of the United States Constitution.

Supporting Facts:  Appellant experienced an "interrogation_induced" confession to end police questioning by admitting guilt.  His confession was induced and made under duress, and that he was under an enormous amount of stress.  Appellant met with law enforcement voluntarily and during the meeting it turned into an interrogation.  Appellant was informed by an officer he would not be arrested no matter what happened leaving appellant to believe and say whatever it took for him to be able to leave the already unbelievable situation.  Again, appellant was made to believe he would be free to leave under any circumstances.  Appellant was late for work and was afraid he was going to lose his job if he showed up late.  Appellant's confession only developed out of his concern to keep his job and family after being told he wouldn't be arrested.

GROUND 7:  Appellate counsel was ineffective when he failed to raise the trial counsel's ineffectiveness for failing to ask the court to appropriate funds for an expert witness on D.N.A. evidence, violating appellant's right to due process and a fair trial.  The Ohio Const. ART. I, Section 10 & 16 of the Fifth and fourteenth amendments of the United States constitution.

Supporting Facts:   Evidence presented by the state was false and misleading.  Appellant was presented and depicted as the sole contributor of "male specific" D.N.A. when in fact there were three other males living at the residence/crime scene.  The possibilities of mail specific D.N.A. from all three males was never presented for the jury to consider.  Counsel failed to object or provide any additional evidence or an expert's opinion to establish the facts contrary to the states [sic] versions of a sole contributor.  Due to the exclusions of other possibilities, the absence of those possibilities was highly prejudicial to appellant.  Without counsel's objection or presentation of those other possibilities the jury was misguided by the state.  In addition, the D.N.A. results was [sic] absent of any sperm, contrary to appellant's false confession.

GROUND 8: Appellant [sic] counsel failed to raise trial counsel's failure to ask the court to appropriate funds for a medical expert concerning the negative results of the rape kit, violating appellant's right to due process and a fair trial.  The Ohio Const. ART. I, Section 10 & 16, the Fifth and Fourteenth Amendments of the United States Constitution.

Supporting Facts:   No Medical evidence was offered, specifically, evidence consistent with penetration, bruising, and/or tearing of the vaginal and rectal areas, pertaining to and contrary to allegations presented at trial.  Although appellant's

15

(5:19CV1836)

confession corroborates the victims testimony, the evidence does not.  The state claimed that the appellant's confession was consistent with the alleged victims but in all reality neither the appellant's or the alleged victims statements were consistent with the evidence.  Any consistence in statements was merely coincidental.  Both statements, the victims and appellant's stated there was sperm but none was detected anywhere at all.  Not on the couch, clothes, or body of the alleged victim.  Fact, there was no evidence to show that what the state presented to the jury without objection was not consistent with any evidence whatsoever.  The jury was mislead and truly lost there way.  Again. the only consistence here is that both parties made statements that coincided to a certain degree.  The lack of sperm and the results of the rape kit seem to show otherwise.  It seems without the presence of any results of the rape kit and an expert witness to what that may indicate may have been by design or in competence.  Both statements appeared consistent but in all actuality they were only consistent in that they were both false to begin with. [sic]

ECF No. 1-5.

## A.  Ground One

In Ground One, Petitioner asserts that the trial court erred by finding that A.B., a child under the age of ten, was competent to testify following a competency hearing.  ECF No. 1-5 PageID #: 20.  Respondent argues that Petitioner defaulted when he failed to object to the Court's finding during trial proceedings and, in the alternative, that Ground One fails to present a cognizable federal constitutional ground for relief.  The Court agrees.

Likely Petitioner's claim in Ground One is not cognizable because it presents no federal issue but asks the federal court to act as an additional state appellate court.  In giving Petitioner the benefit of the doubt, however, the Court considers whether Ground One was defaulted or should be resolved on the merits.  Due to Petitioner's admission that there was no objection made at trial to the court's determination that A.B. was competent to testify at trial, Ground One is defaulted.  *See* (ECF No. 1-5, PageID #22, Ground Five (complaining that '[t]rial counsel raised no objection to A.B.'s competency hearing" or the playing of a recording of A.B.).

16

(5:19CV1836)

Respondent correctly notes that, under Ohio's contemporaneous objection law, if a trial error is not objected to when it happens, a defendant has waived the error for review on appeal. *See State v. Murphy*, 91 Ohio St. 3d 516, 532 (2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review.  The rule is of long standing, and it goes to the heart of an adversary system of justice."). Furthermore, in adjudicating Petitioner's first ground for relief under direct review, the state appellate court enforced Ohio's rule that objections must be made contemporaneously by only reviewing the alleged error under a "plain error" standard.  *See McClellan*, 2018 WL 4026754, at *3-4 (analyzing the issue under the plain error standard).  "[A] state court's plain error analysis does not save a petitioner from procedural default".  *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006).  Rather, a state appellate court's review for plain error is enforcement of the rule. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012).

As indicated above, to successfully overcome a procedural default, a habeas petitioner must show both cause for the procedural default and actual prejudice from the alleged error of federal law.  *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Cause for the default requires the petitioner to demonstrate "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson,* 434 F.3d 412, 417 (6th Cir.2006) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  To establish actual prejudice, a petitioner must show that the trial was infected with constitutional error. *See United States v. Frady*, 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  Based on the record provided, Petitioner has failed to demonstrate any external cause for the default or actual prejudice resulting from the alleged error.  Therefore, the Court denies relief on Ground One.

17

(5:19CV1836)

### B.  Ground Two

In Ground Two, Petitioner argues that his conviction was against the sufficiency and manifest weight of the evidence.  According to Petitioner, A.B., the alleged victim, gave answers that were contradictory and incorrect.  *See* ECF No 1-5 at PageID #: 20.  Additionally, Petitioner claims that there is no physical evidence linking him to the alleged crime.  *Id.*  Respondent argues that the Due Process Clause only provides relief for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *See* ECF No. 6 at PageID #: 63 (citing *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983)).

Respondent correctly indicates that under Ohio law, a claim that a verdict was against the manifest weight of the evidence requires the appellate court to review the entire record, weigh the evidence,  and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983).  Likely, Petitioner's claim under Ground Two challenging the sufficiency of the evidence is cognizable, while the issue of "manifest weight" is not.  *See Thompson v. Harris*, 4:18CV2103, 2020 WL 5810020 (N.D. Ohio Sept. 30, 2020) at *8, *reconsideration denied*, 4:18CV2103, 2020 WL 6702110 (N.D. Ohio Nov. 13, 2020) ("[A] federal court is only allowed to review issues of federal law in a habeas proceeding, [under] 28 U.S.C. § 2254(a), and a manifest-weight-of-the-evidence argument is a state-law argument").  The Court now turns to the merits of Petitioner's claim under the Due Process Clause of the Fourteenth Amendment.

In considering any habeas claim, the Court is obligated to defer to the trier of fact. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (instructing that AEDPA's "highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be

(5:19CV1836)

given the benefit of the doubt").  The state appellate court reviewed this claim and rejected it

under the rationale that follows:

> [*P30] Appellant was charged with one count of rape, a violation of R. C. 2907.02 (A)(1)(b) when the victim was under the age of 10.  The elements of the offense are:

>> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>>                                   *   *   *
>> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>>                                   *   *   *
>> if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole.

> [*P31] "Sexual conduct" is defined in R.C. 2907.01 (A) as including "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

> [*P32] Appellant confessed to this offense and the victim corroborated his confession by her testimony and by her statement to a social worker and those statements provided evidence for each element of the offense.  For those reasons, we conclude there was sufficient evidence to support the conviction.

> [*P33] We likewise find that the verdict was not against the manifest weight of the evidence.  In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."  *State v. Thompkins*, 78 Ohio St.3d 380, 387 1997-Ohio-52, 678 N.E.2d 541 (1997).  Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*  We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the

19

(5:19CV1836)

> written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.
>
> [*P34] The record contains nothing that would support a conclusion that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." Therefore, Appellant's second assignment of error is overruled.

*McClellan*, 2018 WL 4026754, at *5.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 574 N.E.2d 492, 503 (Ohio 1991). "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Moreland v. Bradshaw*, 635 F. Supp.2d 680, 717 (S.D. Ohio 2009), *aff'd*, 699 F.3d 908 (6th Cir. 2012). Petitioner made a series of incriminating statements during his video-taped confession to the police, graphically describing the acts exacted on the victim. *See* Transcript of Suppression Hearing (ECF No. 7-5) at PageID #: 782; Trial Transcript (ECF No. 7-2) at PageID #: 612; 620-21. Petitioner's DNA was also found in the crotch area of the pants of the child. *Id.* The child corroborated Petitioner's confession by detailing the same facts and noting that Petitioner threatened to repeat the acts if she were to tell anyone. *Id.* Neither the confessions nor the corroborating statements by the victim were refuted by Petitioner. *Id.*

Adhering to the standard set forth in *Jenks* during its own review of the record, the Court finds no evidence of error by the state appellate court that warrants either a new trial or a reversal

(5:19CV1836)

of its determination. The state appellate court reasonably rejected Petitioner's claim based on the facts presented. Therefore, the Court denies Petitioner relief on Ground Two.

### C. Ground Three

In Ground Three, Petitioner argues that the trial court erred by admitting into evidence the victim's alleged hearsay statements made to Penny Daly, the social worker assigned by Akron Children's Hospital's multi-disciplinary professional team who treats children suspected of sexual abuse. Petitioner contends the statements were not made for the purpose of medical diagnosis or treatment. *See* ECF No. 1-5 at PageID #: 21. Respondent asserts that Ground Three presents a non-cognizable challenge to a state law evidentiary ruling and, alternatively, the reasonable state court rejection of this claim is entitled to AEDPA deference. *See* ECF No. 6 at PageID #: 69.

In rejecting the Petitioner's challenge to the trial court's evidentiary ruling, the appellate court articulated:

> [*P35] Appellant's third and fourth assignments of error object to the court's ruling regarding evidentiary issues, so we will address those assignments simultaneously. The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 31 Ohio B. 375, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage*, 31 Ohio St.3d 173, 180, 31 Ohio B. 375, 510 N.E.2d 343 (1987).

> [*P36] Appellant contends, as his third assignment of error, that the admission into evidence of the statements made by A.B. to social worker Penny Daly was erroneous because the statements were not made for the purpose of medical diagnosis or treatment.

21

(5:19CV1836)

[*P37] The Supreme Court of Ohio held that "[r]egardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment."  *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio5267, 875 N.E.2d 944 (2007), syllabus.  In *Muttart* the court described a nonexhaustive list of considerations:

> The trial court's considerations of the purpose of the child's statements will depend on the facts of the particular case.  At a minimum, we believe that a non-exhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner***; (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a "bitter custody battle," ***; and (3) whether the child understood the need to tell the physician the truth, ***.  In addition, the court may be guided by the age of the child making the statements, which might suggest the absence  or presence of an ability to fabricate, and the consistency of her declarations. ***.  In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse. ***.

*Muttart*, at ¶ 49 (Internal citations and footnote omitted).

[*P38] The trial court conducted an *Arnold* hearing on August 30, 2017 and Appellee provided the testimony of Penny Daly, the social worker who performed the forensic interview of A.B. and Meghan Dahlheimer, the nurse practitioner to whom Ms. Daly relayed information for purposes of determining what medical treatment would be needed.  Appellant had the opportunity to cross-examine both witnesses.  At the conclusion of the evidence the trial court found that social worker Daly's "interview, statements attributed to the alleged victim, are admissible for diagnosis and treatment purposes."  (August 30, 2017 Transcript of Hearing, pages 57-58).  The court also noted that there were no "Crawford issues" since the ruling was based on the alleged victim testifying and being subject to cross-examination.  The trial court was not willing to sanction the testimony of Ms. Dahlheimer based upon her testimony at this hearing.  Ms. Dahlheimer did not testify at the trial.

[*P39] During the *Arnold* hearing Ms. Daly repeatedly confirmed that the forensic interview was completed to insure that A.B. received proper medical care.  The details gathered were conveyed to Nurse Dahlheimer who, during the *Arnold* hearing, confirmed that her recommended treatment for A.B. (physical exam and collection of rape kit) was based upon the details received from Ms. Daly.

[*P40] Appellant first argues that because the video of the interview between Ms. Daly and A.B. was not played at the *Arnold* hearing, the court erred by permitting

22

(5:19CV1836)

the Appellee to play the video for the jury.  The video was not at issue at the *Arnold* hearing. The trial court conducted that hearing only to determine if A.B.'s statements were testimonial or made for the purposes of medical treatment and therefore qualified for an exemption from the Hearsay Rule under Evid.R. 803(4). The State was not obligated to present the video to accomplish that goal.  The video contained the same information that Ms. Daly was prepared to recount to the jury during her testimony.  A.B. appeared in the video and testified before the jury.  The Court offered Appellant the opportunity to recall A.B. to question her about the video, but he declined the offer.

[*P41] Appellant also contends that the information gathered by Ms. Daly was not sought for the purpose of medical treatment based upon Nurse Dahlheimer's recommendations and a comment by the trial court.  Ms. Daly's unrebutted testimony at the *Arnold* hearing was that the information was gathered to facilitate medical treatment of A.B.  The recommendation to collect a rape kit as part of an examination and the lack of any medical treatment does not alter the purpose of the interview by Ms. Daly.  The Appellant also contends the court erred based upon a remark that the " "methodology and training that she used was appropriate to elicit from the alleged victim the statements necessary for her to then recommend to other individuals, medical individuals, what action needs to be taken" (August 30, 2017, Tr. p. 57-58) contending that this refers to Ms. Daly making medical recommendations, which she did not do.  We interpret this comment to refer to the gathering of the information by Ms. Daly and the recommendation issued by Nurse Dahlheimer as was demonstrated on the record.  Regardless of the confusion caused by the use of pronouns in the trial court's comment, it was evident that Ms. Daly's goal was collection of information for the purpose of medical diagnosis.

[*P42] We hold that the trial court did not abuse it discretion by permitting the testimony of Ms. Daly or the playing of the recording of the interview of A.B. as that information was sought for the purpose of providing medical treatment.  Appellant's third assignment of error is overruled..

*McClellan*, 2018 WL 4026754, at *5-7.

Petitioner's claim in Ground Three is likely not cognizable because it incorrectly claims that Daly's testimony amounted to inadmissible hearsay under the Ohio Rules of Evidence.  *See* Ohio Evid. R. 803(4).  The Court agrees with the state court's determination that the interview with the social worker was conducted "for the purpose of providing medical treatment," and thus was admissible under the hearsay exception set forth by state law.  *McClellan*, 2018 WL 4026754, at *7.  Furthermore, Respondent correctly notes that Ground Three is reduced to a state

23

(5:19CV1836)

law claim because the child testified during Petitioner's trial, thus negating any potential issue under the Sixth Amendment's Confrontation Clause.  *Id.*  at *6.  As indicated above,  "a federal court is only allowed to review issues of federal law in a habeas proceeding, [under] 28 U.S.C. § 2254(a), and a manifest-weight-of-the-evidence argument is a state-law argument."  *Thompson v. Harris*, 4:18CV2103, 2020 WL 5810020 (N.D. Ohio Sept. 30, 2020) at *8*, reconsideration denied*, 4:18CV2103, 2020 WL 6702110 (N.D. Ohio Nov. 13, 2020).

Alternatively, in weighing the merits of Petitioner's claim, "[t]he habeas corpus petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  "Clear and convincing evidence exists when the movant 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'"  *Automotive Techs. Intern., Inc. v. Delphi Corp.*, 776 F. Supp.2d 469, 477 (E.D. Mich. 2011) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

Based on the Court's review of the record, Petitioner failed to demonstrate by clear and convincing evidence that the factual determinations of the state court were incorrect.  Similarly, the Court finds nothing in the record to support the notion that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. §2254(e).  Therefore, the Court, according all due deference to state court proceedings, denies Petitioner relief on Ground Three.

### D.  Ground Four

In Ground Four, Petitioner argues that the trial court erred by admitting into evidence portions of the video that introduced other acts evidence in violation of Rule 404(B) of the Ohio Rules of Evidence.  Respondent notes that the state appellate court's finding that the trial court

24

(5:19CV1836)

erred (in admitting the portion of A.B.'s interview relating her statements that Petitioner had

digitally penetrated her before and that he has "whopped" her with a belt) in improperly

admitting "other acts" evidence amounted to a harmless error in the following assessment:

> [*P43] Appellant contends in his fourth assignment of error that the trial court erred by admitting that portion of the video containing "other acts evidence" in violation of Evid.R. 404(B). Specifically, he is referencing a statement by A.B. that Appellant had previously digitally penetrated her anus and that he whooped her with a belt.

> [*P44] Rule 404(B) of the Ohio Rules of Evidence and R.C. 2945.59 preclude admission of other acts evidence in order to prove a character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 16. The Rules of Evidence and the Code carve out exceptions:

>> Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B)—to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident—and in considering other acts evidence, trial courts should conduct a three-step analysis.

>> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

> *Williams*, at ¶¶ 19-20.

> [*P45] This issue arose during the playing of the videotape of A.B.'s interview by Ms. Daly. Appellant did not object to the use of the videotape until that point in the recording just before A.B. was to comment about Appellant's prior sexual abuse of her. The tape was stopped and Appellant explained his objection at the bench. Appellee cited to the theory set out in *Williams*—that this evidence was not designed to show that the Appellant acted in conformity with his bad character, but only to show that A.B. was "groomed" to be compliant with the Appellant's requests and instructions, as objectionable as they were. The trial

25

(5:19CV1836)

court reluctantly agreed with the Appellee and provided a limiting instruction directing the jury to limit their consideration of the prior acts mentioned in the video to show only a "pattern of conduct or modus operandi on the part of the Defendant" and not for any other purpose.  Appellant did not request any further limiting instruction be included in the jury instructions, and none was included.  The video tape was admitted into evidence without objection and neither party made reference to the prior acts in closing.

[*P46] The Supreme Court of Ohio addressed a similar situation in *State v. Williams*, *supra*, where the State sought to introduce the prior acts of Williams with a juvenile who was not a victim in the case before the court. Williams objected that the introduction of this evidence was a violation of Evid.R. 404(B) and R.C. 2945.59 which prohibit introduction of "[e]vidence that an accused committed a crime other than the one for which he is on trial *** when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.  *Williams*, at ¶ 15.  The State argued "that two independent bases exist to admit the other acts evidence in this case: the intent and the plan of the accused, i.e., intent of sexual gratification emanating from sexual conduct with teenage males and a specific plan to target vulnerable teenage boys and groom them for eventual sexual activity.  *Williams*, at ¶ 12.  The State made a similar argument in this case, that the acts of Appellant were preparation and plan of targeting or grooming [A.B.], but we find that the facts herein are distinguishable from the facts of *Williams* and that when we apply the analysis of *Williams* to these facts, we find that the prior acts evidence was improperly admitted.

[*P47] We must first determine whether the other acts evidence is relevant to making any fact of consequence to determination of the action more or less probable than it would be without the evidence.  The evidence may be relevant, but it does not show Appellant's preparation and plan of targeting or grooming A.B.

[*P48] The other acts evidence in *Williams* was of grooming techniques which were not criminal acts, but which ultimately resulted in criminal sexual acts.  The defendant in *Williams* targeted, befriended, and mentored vulnerable teenage boys in an effort to gain their trust to facilitate his plan to engage in sexual activity with them.  In the instant case, the other acts evidence is not of grooming techniques Appellant employed on the victim, but rather of independent criminal sexual acts on the victim which are qualitatively the same as the charged offense under the law.   Appellant could have been charged with separate violations of R.C. 2907.02(A)(1)(b) for each act of digital and penile penetration. His prior acts of digital penetration were not an effort to gain her trust, or her compliance with his directions, but rather were separate, independent acts of rape.  Because consent is not a defense to the charge of rape in this case and the defendant's intent is not [at] issue, the child victim's compliance with the directives of appellant or lack thereof was not relevant. [fn 1 Under certain circumstances, the prior acts of

26

(5:19CV1836)

lesser, illegal  sexual conduct may be admissible to show scheme or plan of grooming the same victim for later, more serious sexual offenses when consent or the defendant's intent is at issue.]

[*P49] Further, in *Williams* the court found the testimony concerning the prior acts was relevant to show his intent was sexual gratification, citing R.C. 2907.01 and R.C. 2907.05(A)(1). *Williams*, *supra*, ¶22.  R.C. 2907.05(A)(1) defines gross sexual imposition, with which Williams was charged, to require "sexual contact."  R.C. 2907.01 defines sexual contact to require the touching be for the "purpose of sexually arousing or gratifying either person."  In the instant case, Appellant was charged only with rape, which does not require proof the conduct was for the purpose [of] sexual arousal or gratification

[*P50] Further, in *Williams* the court found the testimony concerning the prior acts was relevant to show his intent was sexual gratification, citing R.C. 2907.01 and R.C. 2907.05(A)(1).  *Williams*, *supra*, ¶22.  Revised Code 2907.05(A)(1) defines gross sexual imposition, with which Williams was charged, to require "sexual contact."  Revised Code 2907.01 defines sexual contact to require the touching be for the "purpose of sexually arousing or gratifying either person."  In the instant case, Appellant was charged only with rape, which does not require proof the conduct was for the purpose sexual arousal or gratification[.]

[*P51] The second step is to consider whether the evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith, or whether the other acts evidence is presented for a legitimate purpose.  We find no legitimate purpose for which the evidence was admitted in this case other than to show Appellant acted in conformity with his past behavior with this victim.

[*P52] The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.  As discussed above, the evidence was of very little relevance in this case other than to demonstrate Appellant acted in conformity with his pattern of having committed prior acts of rape against this same child victim.  The admissibility of other acts evidence is carefully limited because of the substantial danger the jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment.  See *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).  This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature.  *State v. Schaim*, 65 Ohio St.3d 51, 1992-Ohio-31, 600 N.E.2d 661 (1992).  "Because of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act."  *State v. Miley*, 5th Dist. Richland No. 2005-CA-67, 2006-Ohio4670, ¶ 59.  In a case where the evidence is of a particularly inflammatory

27

(5:19CV1836)

nature, a curative instruction may be insufficient to cure the prejudicial effect. *State v. Patterson*, 5th Dist. Stark No. 2017CA00022, 2017-Ohio-8970, ¶¶ 36-37, *appeal not allowed*, 152 Ohio St.3d 1491, 99 N.E.3d 427, 2018-Ohio-2155.

[*P53] This case involves other acts evidence of prior acts of rape against the same victim, which were of limited probative value to the charged act of rape, but highly prejudicial due to the age of the victim and the inflammatory nature of the evidence. Although the limiting instruction may have lessened the impact of the evidence, we find the instruction insufficient to cure the prejudicial effect and the other acts evidence [is] inadmissible.

[*P54] Notwithstanding our finding that the prior acts were not admissible, we find that their admission was harmless in this case considering the weight of the admissible evidence.  The testimony of the victim, the victim's statements to the social worker and the Appellant's comprehensive confession are consistent, detailed and unrebutted and supply the basis for a conviction even if the prior acts evidence had been excluded.  *State v. Burge*, 5th Dist. Stark No. 2016CA00217, 2017-Ohio-7862, ¶ 30.

[*P55] We overrule Appellant's fourth assignment of error.

*McClellan*, 2018 WL 4026754, at *7-9.

At issue is the admission of a portion of A.B.'s interview by the state trial court.  *See id.* The state appellate court determined that this admission amounted to harmless error.  *Id.* Harmless error review assesses whether the violation in question "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015) ("Under the harmless error rule, an error in admitting or excluding evidence may furnish a basis for granting a new trial only if it affects a party's "substantial rights" or if justice so requires.").

Petitioner offers no evidence to demonstrate that the error had a substantial effect on the jury.  The state appellate court highlighted that the attorneys never mentioned during closing arguments the interview statements at issue in this claim, nor were the witnesses questioned about them.  *See McClellan*, 2018 WL 4026754, at *7.  Furthermore, the Court finds that the

28

(5:19CV1836)

evidence presented against Petitioner was so overwhelming that a reasonable trier of fact could not find that the errant admission "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Therefore, the Court agrees with the assessment that this admission amounted to harmless error and denies Petitioner relief on Ground Four.

### E. Grounds Five, Six, Seven, and Eight

Respondent retorts that (like Ground One) Grounds Five through and including Eight are procedurally defaulted due to Petitioner having failed to appropriately raise them before the state court. *See* ECF No. 6 at PageID #: 52-53. Under Ground Five, Petitioner argues that his counsel was constitutionally deficient for failing to challenge the same trial court "errors" Petitioner raised in Grounds One and Three. *See* ECF No. 1-5 at Page ID # 22-23. Under Grounds Six, Seven, and Eight, Petitioner asserts that his Fifth and Fourteenth Amendment right to due process and a fair trial were violated by his counsel's ineffective use of experts. *See* ECF No. 1-5 at PageID #: 23-24. The record shows that Petitioner attempted to raise these claims of ineffective assistance of appellate counsel in an Application for Reopening, pursuant to Ohio App. R. 26(B). *See* ECF No. 6-1 at PageID #: 242-52. The appellate court, however, denied, Petitioner's application, holding "that [his] affidavit fails to fulfill the requirements of App. R. 26(B)(2)(d) as it provides no more [than] conclusory assertions, *State v. Sanders*, 8th Dist. Cuyahoga No. 76620, 2004-Ohio-6846, ¶10, and, therefore, his motion is denied." *See* ECF No 6-1 at PageID #: 264. Accordingly, the Ohio appellate court rejected Petitioner's Rule 26(B) application due to his failure to adhere to a state procedural rule. This is clear default.

As indicated above, to successfully overcome a procedural default, a habeas petitioner must show both cause for the procedural default and actual prejudice from the alleged error. A

(5:19CV1836)

valid claim of ineffective assistance of counsel could serve as sufficient cause to excuse

procedural default.  That opportunity, however, is foreclosed when the claim of ineffective

assistance of counsel, itself, is procedurally defaulted, as is the case here by Petitioner's failure to

comply with rules for applying to reopen his direct appeal.  *See Shinn v. Ramirez*, 142 S.Ct.

1718, 1733 (2022); *Garza v. Idaho*, 139 S.Ct. 738, 744 (2019); *Goldberg v. Money*, 692 F.3d

534, 537 (6th Cir.2012) (citing *Edwards*, 529 U.S. at 453); *see also Hodges v. Colson*, 727 F.3d

517, 530 (6th Cir. 2013); *Landrum v. Mitchell*, 625 F.3d 905, 916, 934 (6th Cir. 2010).  *Lancaster

v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003); *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008)

("An ineffective assistance of appellate counsel claim can serve as cause to excuse a procedural

default only if the ineffective assistance of appellate counsel claim is not itself procedurally

defaulted.").

        Nonetheless, even if the Court considers prejudice resulting from the default, Grounds

Five, Six, Seven, and Eight still fail as there is no evidence that had counsel objected or sought

expert evidence that the results of trial would have been different.  Going further, even when the

Court considers the guidance of *Strickland*, at best, counsel's decisions were strategic, not

neglectful and did not result in prejudice to Petitioner.  *See Strickland v. Washington,*  466 U.S.

668, 687 (1984) (finding of ineffective assistance of counsel requires that the petitioner

demonstrate that counsel's performance was deficient, and, secondly, that the deficient

performance ultimately prejudiced the defense).

        In Grounds Six, Seven and Eight, Petitioner asserts that appellate counsel was

ineffective when he failed to raise the issue of trial counsel's failure to appropriate funds

for an expert witness in false confessions, an expert witness on D.N.A. evidence, and a

medical expert concerning the negative results of the rape kit, respectively.  ECF No. 1-5

(5:19CV1836)

at PageID #: 23-24.  In response to Ground Six, Respondent notes that Petitioner ignores

the state court's determination that his comprehensive confession was voluntary, and

instead claims that his confession was coerced and made under duress.  *See* ECF No. 6-1

at PageID #: 266.  In response to Ground Seven, Respondent reduces Petitioner's argument,

that the DNA evidence presented by the state was false and misleading because it did not

contain sperm but only his "touch DNA" in the crotch area of the child's underpants, to be

speculative.  *See* ECF No. 6 at PageID #: 84.  Finally, in response to Ground Eight,

Respondent argues that Petitioner's claim not only ignores his own detailed confession

pertaining to his anal raping of the victim, but also ignores the fact that rape can occur

without any outward injury.  *See id.*

      The state appellate court, in its alternative and independent review of the merits,

summarily rejected the allegations of appellate counsel's deficiency:

> Appellant's second, third and fourth assignments of error fault trial counsel for
> not requesting funding for various expert and appellate counsel for not arguing
> trial counsel was ineffective as a result.  "[T]he failure to call an expert and
> instead rely on cross-examination does not constitute ineffective assistance of
> counsel." *** Thus, the defense counsel's decision to rely on cross-examination
> should be viewed as a legitimate "tactical decision" particularly since the results
> * * * may not necessarily have proven favorable for the defense.  *State v.
> Hartman*, 93 Ohio St.3d 274, 299, 2001-Ohio-1580, 754 N.E.2d 1150 (2001),
> citations omitted.  We can only speculate regarding the trial or appellate
> counsel's analysis and "[w]e will not second-guess the strategic decisions
> counsel made" at either the trial or appellate stage of this case.  *State v. Post*, 32
> Ohio St.3d 380, 388, 513 N.E.2d 754 (1987) as cited in *State v. Mason*, 82 Ohio
> St.3d 144, 169, 694 N.E.2d 932 (1998).
>
> We also find that appellant's argument regarding the need and impact of expert
> testimony fails to overcome the presumption that counsel acted properly.  His
> contentions are replete with unsupported optimism that the testimony of an
> expert would have provided him an acquittal when the reality of the record is
> otherwise.  The subject matter of the experts would have offered little or no
> support to refute his voluntary confession.

(5:19CV1836)

> Appellant's affidavit fails to fulfill the requirements of App.R.26 (B)(2)(d) and his motion must be denied on those grounds.  However, even if we could accept his affidavit, Appellant has not demonstrated that his trial or appellate counsel's representation was deficient in any way, so his motion would fail on the merits.

ECF No. 6-1 at PageID #: 265-66.

Petitioner provides no justification for the Court to overturn that adequate and independent state court judgment.  *See also* ECF No. 6 at PageID #: 53 (quoting *Harris v. Reed*, 489 U.S. 255, 264 n.10).  Counsel's decision to not procure expert witnesses does not necessarily equate to insufficient representation.  *See Franklin v. Anderson*, 267 F. Supp. 2d 768, 780 (S.D. Ohio 2003), *aff'd*, 434 F.3d 412 (6th Cir. 2006); U.S. v. Van Der Ent, 52 Fed. Appx. 793, 796 (6th Cir. 2002) (unpublished) (highlighting instances when courts found counsel to be effective despite failing to obtain expert witnesses).  Furthermore, when the Court liberally considers whether failure to excuse the default of Grounds Five through Eight results in a miscarriage of justice, it easily concludes that, in the face of the overwhelming evidence against Petitioner---his own confession and the testimony of the victim---there is little room for doubt that justice has been fairly served.  Therefore, the Court denies relief on Grounds Five, Six, Seven, and Eight.

### IV.  Certificate of Appealability (COA)[6]

The Court must now determine whether to grant a Certificate of Appealability ("COA") for Petitioner's ground for relief.  Habeas courts are guided in their consideration of whether to grant a COA by 28 U.S.C. § 2253, which provides in relevant part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --

---

[6] Citing the standard put forth by this Court in previous habeas rulings.  *See Stewart v. Sheldon*, 1:19CV2283, 2022 WL 1289229 (N.D. Ohio Apr. 29, 2022); *Freeman v. Gray*, 1:19CV2907, 2022 WL 3348625 (N.D. Ohio Aug. 12, 2022).

(5:19CV1836)

>       (A) the final order in a habeas corpus proceeding in which the detention
>       complained of arises out of process issued by a State court . . .
>
>   (2) A certificate of appealability may issue under paragraph (1) only if the applicant has
>   made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.

After taking the above standard into consideration, the Court finds as follows:

The Court will not issue a COA for any of Petitioner's eight grounds (ECF No. 1).  No

jurist of reason would debate the Court's conclusions regarding any of the claims raised in the

Petition.

## V. Conclusion

Following review, and for the reasons stated above, the habeas petition (ECF No. 1) is

denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision

could not be taken in good faith, and that there is no basis upon which to issue a COA.  28

U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A separate Judgment Entry will issue.


IT IS SO ORDERED.



| September 30, 2022 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

33